1
2
3
4                       UNITED STATES DISTRICT COURT

5                     NORTHERN DISTRICT OF CALIFORNIA

6

7    MICHAEL L LUCKERT,                  Case No.  19-cv-08204-PJH

8                   Plaintiff,

9           v.                          **ORDER GRANTING IN PART AND
                                        DENYING IN PART DEFENDANTS'
10   O. SMITH, et al.,                  MOTION FOR SUMMARY JUDGMENT**

11                  Defendants.         Re: Dkt. No. 70

12

13        Plaintiff, a former county detainee, proceeds with a pro se civil rights complaint

14   under 42 U.S.C. § 1983.  He alleges that at the public library, Patrol Officer Ochoa and

15   Deputies Smith, Gutierrez, Brule and Espiritu used excessive force in arresting him, and

16   Gutierrez and Deputy Mendoza used excessive force while placing him in a cell at the

17   county jail.[1]  Defendants filed a motion for summary judgment on the merits.  Docket No.

18   70.  Plaintiff filed an opposition (Docket Nos. 77, 81, 85) and defendants filed a reply

19   (Docket No. 87).  For the reasons set forth below, the motion for summary judgment is

20   granted in part and denied in part.

21                      **MOTION FOR SUMMARY JUDGMENT**

22        **Legal Standard**

23        Summary judgment is proper where the pleadings, discovery and affidavits show

24   that there is "no genuine dispute as to any material fact and the movant is entitled to

25   judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those which may

26   affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

27   _____

28   [1] The court does not address claims raised for the first time in the opposition to summary
     judgment or that were already dismissed.

United States District Court
Northern District of California

(1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

  The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial.  *Id.*  If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins.  *Id.*

  **Facts**

  A review of the record indicates that the following facts are undisputed unless otherwise noted:

  On February 26, 2019, at approximately 4:15 p.m., defendant Library Patrol Officer Ochoa was on duty at the San Francisco Main Library and received a call that a library staff member had been physically assaulted on the sixth floor.  Motion for Summary Judgment ("MSJ") Ochoa Decl. ¶ 3.  Ochoa responded to the sixth floor, and library staff identified plaintiff as the assailant, who was still in the area.  *Id*. at ¶ 4.  Ochoa approached plaintiff, who was visibly agitated and acting erratically and took up an aggressive stance.  *Id*. at ¶¶ 4, 5.  Ochoa kept his distance and attempted to speak with plaintiff about the assault.  *Id*. at ¶ 5.

  After attempting to speak with plaintiff, Ochoa radioed for assistance to the San Francisco deputy sheriffs who were assigned to the library.  *Id*.  Defendant Deputy Smith, who was in uniform, arrived, identified himself as a sheriff's deputy and tried to speak with plaintiff.  Smith Decl. ¶¶ 3-5.  Smith observed that plaintiff was still visibly agitated.  *Id*. at ¶ 4.

  After trying to speak with plaintiff, Smith, with Ochoa's assistance, handcuffed plaintiff for everyone's safety as they continued to investigate.  Smith Decl. ¶ 5; Ochoa

Decl. ¶¶ 6-7.  Smith and Ochoa applied only enough pressure to maintain control of plaintiff, who was pulling away and flailing his arms.  Smith Decl. ¶ 5; Ochoa Decl. ¶ 7. Once plaintiff was handcuffed, Smith told plaintiff that he was under arrest for willfully resisting, delaying or obstructing a peace officer.  Smith Decl. ¶ 5.  The handcuffing by Smith and Ochoa did not cause plaintiff any pain.  MSJ, Wang Decl. Ex. A, Luckert Deposition at 61.

Smith then escorted plaintiff from the sixth floor to the security office on the first floor.  *Id*. at ¶ 6.  Smith kept his hands on plaintiff but only applied enough pressure to be able to detect any resistance and maintain control because plaintiff was verbally hostile and aggressive.  *Id*.  Smith radioed his partner, defendant Deputy Gutierrez, and informed him about the incident and asked him to meet him at the security office.  *Id*. Defendant Deputies Brule and Espiritu were nearby and responded to the library.  Brule Decl. ¶ 2.

Gutierrez, Brule and Espiritu met Smith, Ochoa and plaintiff at the security office. Brule Decl. ¶ 3; Gutierrez Decl. ¶ 3.  Prior to searching plaintiff, Gutierrez asked him if he had anything on his person that could harm Gutierrez.  Gutierrez Decl. ¶ 4.  Plaintiff did not respond but was verbally hostile and aggressive.  *Id*.  Gutierrez applied a bent wrist-lock on plaintiff with one hand and pat searched with the other.  *Id*. ¶ 5  Gutierrez applied minimal pressure and found a knife concealed in plaintiff's pocket.  *Id*. at ¶¶ 4-5.  Nobody made any physical contact with plaintiff in the security office other than when Gutierrez searched him.  *Id*. at ¶ 5; Smith Decl. ¶ 7; Espiritu Decl. ¶ 3; Brule Decl. ¶ 3; Ochoa Decl. ¶ 9.

Plaintiff disputes Gutierrez's statements and contends that he was not resisting when Gutierrez bent his wrist backwards causing extreme pain and injuries.  MSJ, Wang Decl. Ex. A, Luckert Deposition at 61; Docket No. 77 at 7, 10.

Gutierrez, Espiritu and Brule escorted plaintiff to the transport van outside of the library and secured him in the back.  Gutierrez Decl. ¶ 6; Brule Decl. ¶ 4.  Gutierrez had one hand on plaintiff's shoulder and the other on his elbow, but he did not use any force.

Gutierrez Decl. ¶ 6.  Brule and Espiritu did not make any physical contact with plaintiff during his escort to the van.  MSJ, Wang Decl. Ex. A, Luckert Deposition at 81.

Defendant Deputy Mendoza arrived and drove plaintiff to San Francisco County Jail with Gutierrez.  Gutierrez Decl. ¶ 7; Mendoza Decl. ¶ 3.  At the jail, Gutierrez again searched plaintiff by applying a rear wrist-lock on plaintiff with minimal pressure. Gutierrez Decl. ¶ 9.

During the booking process at the jail, plaintiff refused to answer questions from Jail Medical Services, including refusing to answer whether he was suicidal.  Gutierrez Decl. ¶ 10.  Plaintiff disputes this and states that no one identified themselves as medical professionals to treat his injuries.  Docket No. 77 at 4.  At times during the booking process, Mendoza applied a control-hold to gain plaintiff's compliance with fingerprinting, photographing and medical triage.  Mendoza Decl. ¶ 5.  Minimal pressure was applied. *Id*.

Plaintiff was then placed in a safety cell for being combative and presenting an imminent danger to himself and others.  *Id*. at ¶ 6.  Mendoza placed plaintiff in the safety cell by placing his hands on plaintiff's shoulder and wrist, applying only enough pressure to maintain control and detect any resistance.  *Id*.  Plaintiff was ordered to his stomach so that his handcuffs could be removed, and his clothes were removed because he had soiled them.  *Id*.; Gutierrez Decl. ¶ 12.  Other deputies removed plaintiff's handcuffs and clothes while Mendoza held plaintiff's shoulder and arms using only enough pressure to detect any resistance and keep plaintiff from rolling over.  Mendoza Decl. ¶ 6.  Gutierrez states he did not make physical contact with plaintiff while in the safety cell.  Gutierrez Decl. ¶ 11.

Plaintiff disputes this and states that he was not resisting.  According to plaintiff, Gutierrez was making contact with him in the cell, bending back his wrist, hand and fingers, causing extreme pain and injuries.  Docket No. 77 at 7, 10.  Medical reports indicated swelling and a punctate hyperdensity in the distal left thumb and excoriations on the fingers but no fractures.  *Id*. at 30, 34.

4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**ANALYSIS**

**Legal Standard**

An allegation of the use of excessive force by a law enforcement officer in effectuating an arrest states a valid claim under 42 U.S.C. § 1983.  *See Rutherford v. City of Berkeley*, 780 F.2d 1444, 1447 (9th Cir. 1986), *overruled on other grounds by Graham v. Connor*, 490 U.S. 386 (1989); *see also Byrd v. Phoenix Police Dep't*, 885 F.3d 639, 641-42 (9th Cir. 2018) (pro se allegations that police officers "beat the crap out of" plaintiff and caused him severe injury enough to support a legally cognizable claim under § 1983.  Excessive force claims which arise in the context of an arrest or investigatory stop of a free citizen are analyzed under the Fourth Amendment reasonableness standard. *See Graham v. Connor*, 490 U.S. 386, 394-95 (1989).

"To determine whether officers used excessive force during an arrest, courts balance 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Luchtel v. Hagemann*, 623 F.3d 975, 980 (9th Cir. 2010) (quoting *Graham*, 490 U.S. at 396).  In the Ninth Circuit, evaluation of an excessive force claim under *Graham* involves three steps: (1) assessment of the severity of the intrusion on Fourth Amendment rights by evaluating the type and amount of force used; (2) evaluation of the government's interest in the use of force; and (3) balancing the gravity of the intrusion on the individual with the government's need for the intrusion.  *Glenn v. Washington Cnty*, 673 F.3d 864, 872 (9th Cir. 2011).  "The operative question in excessive force cases is 'whether the totality of the circumstances justifie[s] a particular sort of search or seizure.'" *County of Los Angeles v. Mendez*, 137 S. Ct. 1539, 1542 (2017) (alteration in original) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)).

Defendants met their burden in demonstrating the absence of a genuine issue of material fact with respect to the excessive force.  The defendants submitted declarations attesting to the minimal force used and stating that it was reasonable in light of the circumstances.  The issue remains if plaintiff has met his burden in presenting specific

5

facts showing that there is a genuine issue for trial.

Plaintiff's opposition filings mostly focus on his medical reports and generally state that he was not resisting and was subject to excessive force by defendants.  He presents very few arguments regarding the actions of the individual defendants with respect to the legal standards above, and some of his allegations and evidence are contradictory; nevertheless, the court has liberally construed his filings in light of his status as a pro se formerly incarcerated party.  *See Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) ("We have, therefore, held consistently that courts should construe liberally motion papers and pleadings filed by pro se inmates and should avoid applying summary judgment rules strictly.").  However, while *Ponder* relieves pro se inmates from strict compliance with summary judgment rules, it does not entirely release them from any obligation to identify or submit at least some competent evidence in support of their claim. *Soto v. Sweetman*, 882 F.3d 865, 873 (9th Cir. 2018) (plaintiff not entitled to equitable tolling because he failed to allege in his complaint that he could not proceed with grievance process until after an investigation was completed; failed to submit any declaration, affidavit or other competent evidence in his opposition to summary judgment; and failed to raise the issue until responding to the district court's show cause order). Moreover, it is not the task of the district court to scour the record in search of a genuine issue of triable fact.  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment.  *Id*.  If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party.  *See id*.; *see, e.g.*, *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028-29 (9th Cir. 2001) (even if there is evidence in the court file which creates a genuine issue of material fact, a district court may grant summary judgment if the opposing papers do not include or conveniently refer to that evidence).

Plaintiff presents no evidence that Brule or Espiritu used any force against him. Ochoa's only use of force was in helping Smith handcuff plaintiff.  It is undisputed that the

1   handcuffing did not cause him any pain.  Summary judgment is granted for these

2   defendants.

3          Other than general allegations, plaintiff presents no evidence that Smith or

4   Mendoza used excessive force.  Simply listing the defendants' names and stating that

5   they used excessive force without providing any specific details regarding the type of

6   force used and for which incident, is insufficient.  Smith and Mendoza submitted

7   declarations describing their various interactions with plaintiff and the amount of force

8   they used, which they argued was minimal.  Plaintiff fails to even attempt to present

9   evidence in response.  Summary judgment is granted for these defendants.  The court

10  notes that while plaintiff presented specific allegations against Mendoza in the operative

11  amended complaint, he states that it was a mistake. Docket No. 77 at 9-10.  Plaintiff

12  states in the opposition that he confused Mendoza and Gutierrez and the allegations

13  against each defendant should be switched.  *Id.*

14         Plaintiff only presents specific allegations in his opposition to summary judgment

15  regarding Gutierrez.  He states that he was not resisting in the library security office when

16  Gutierrez bent his wrist backwards, causing extreme pain and injuries.  Similarly, plaintiff

17  states that while in the county jail Gutierrez again bent his wrist as well as his hand and

18  fingers, causing injuries that are demonstrated in his medical records.  Plaintiff has met

19  his burden in presenting specific facts showing that there is a genuine issue for trial for

20  Gutierrez.

21         Unreasonable force claims are generally questions of fact for a jury.  *See*

22  *Headwaters Forest Defense v. Cnty. of Humboldt*, 240 F.3d at 1185, 1198 (9th Cir. 2000)

23  *overruled on other grounds*; *Hervey v. Estes*, 65 F.3d 784, 791 (9th Cir. 1995) (citing

24  *Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991).  Although excessive force cases

25  can be decided as a matter of law, they rarely are because the Fourth Amendment test

26  for reasonableness is inherently fact-specific.  *See Headwaters*, 240 F.3d at 1198; *see,*

27  *e.g.*, *Estate of Diaz v. City of Anaheim,* 840 F.3d 592, 605-06 (9th Cir. 2016) (although

28  plaintiffs presented substantial evidence that force was unreasonable, judgment as a

United States District Court
Northern District of California

matter of law inappropriate because defendants also presented substantial evidence to support their position; jury entitled to choose between both positions based on their weighing of the evidence and witnesses' credibility).

In this case there are disputed facts about the nature of the force used in bending plaintiff's wrist, hand and fingers and the injuries suffered by plaintiff; specifically, there is a contest between plaintiff's version of the facts and Gutierrez's explanation.  If plaintiff's facts are true and Gutierrez forcefully bent plaintiff's wrist, hand and fingers on two separate occasions while plaintiff stated he was in pain and while plaintiff was not resisting, and this force caused plaintiff's injuries, then a jury could conclude there was a constitutional violation.

A jury could make the same conclusion if plaintiff was already handcuffed during the use of force against his wrist, hands and fingers.  The Ninth Circuit has long recognized that abusive handcuffing, which involves the wrist, hands and fingers, may constitute a Fourth Amendment violation.  *See, e.g.*, *Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir.1993) (denying qualified immunity and holding that the "abusive application of handcuffs" causing pain and bruising was unconstitutional); *see also Luchtel v. Hagemann*, 623 F.3d 975, 989 (9th Cir. 2010) (Beezer, J., concurring in part and dissenting in part) (noting that "the right to be free from excessive force in handcuffing is clearly established in our precedent").

For all these reasons, summary judgment is denied for Gutierrez.

**Qualified Immunity**

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The rule of "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  Defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in

any given situation.  *Id*. at 205.  A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established, such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (overruling the sequence of the two-part test that required determining a deprivation first and then deciding whether such right was clearly established, as required by *Saucier*).  The court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case.  *Pearson*, 555 U.S. at 236.

The court already found that, looking at the evidence in the light most favorable to plaintiff, he states a claim of excessive force.  Accordingly, the court proceeds to the next step, which requires the determination of whether, at the time of the incident, it would have been clear to a reasonable official that his conduct was unlawful in the situation he confronted.  *See Saucier*, 533 U.S. at 201.  In deciding this, the court must identify the "contours of the right" that plaintiff alleges defendant violated.  The Supreme Court has made clear that the right an official is alleged to have violated must have been "clearly established in a particularized context."  *Conner v. Heiman*, 672 F.3d 1126, 1132 (9th Cir. 2012) (citing *Saucier*, 533 U.S. at 202).

As early as 1993, in *Palmer*, the Ninth Circuit rejected an officer's contention that he was entitled to qualified immunity against a claim of tight handcuffs because the officer "has presented no evidence that would justify handcuffing [plaintiff] so tightly that he suffered pain and bruises, or to justify his refusal to loosen the handcuffs after [plaintiff] complained of the pain." The Ninth Circuit held in that case: "no reasonable officer could believe that the abusive application of handcuffs was constitutional." *Palmer*, 9 F.3d at 1436.

Moreover, it has long been clearly established that the reasonableness of the amount of force applied during an arrest must be balanced against the need for force. *See, e.g.*, *Deorle v. Rutherford*, 272 F.3d 1272, 1279 (9th Cir. 2001). When a suspect is

United States District Court
Northern District of California

9

not actively resisting or attempting to evade arrest, does not pose any immediate threat to the safety of the officers or others, and is being arrested for a minor and nonviolent offense, it would have been clear to a reasonable officer that no need for force existed. *See, e.g.*, *Bryan v. MacPherson*, 630 F.3d 805 828-29 (9th Cir. 2010) (arrest for a traffic infraction "militates against finding the force used to effect an arrest reasonable where the suspect was also nonviolent and posed no threat to the safety of the officers or others" (internal quotation marks omitted)).

Because it has been clearly established prior to this incident that the force used in this incident would have been excessive, Gutierrez is not entitled to qualified immunity.

### REFERRAL TO PRO SE PRISONER MEDIATION PROGRAM

This case appears to be a good candidate for the court's mediation program. Good cause appearing therefore, this case is now referred to Magistrate Judge Illman for mediation or settlement proceedings pursuant to the Pro Se Prisoner Mediation Program. The proceedings will take place within 120 days of the date this order is filed.  Magistrate Judge Illman will coordinate a time and date for mediation or settlement proceedings with all interested parties and/or their representatives and, within five days after the conclusion of the proceedings, file with the court a report for the prisoner mediation or settlement proceedings.

From time to time, prisoner-plaintiffs have refused to participate in mediation and settlement proceedings.  Although the court assumes that will not occur in this case, the court wants to make clear the consequences if it does.  Judicial resources are consumed preparing for mediation and settlement conferences, and those resources are wasted when a scheduled conference does not proceed.  To avoid that happening, plaintiff is now specifically ordered to attend and participate in the mediation or settlement conference proceedings.  He does not have to reach a settlement or other resolution of his claims, but he absolutely must attend and participate in all the mediation or settlement conference proceedings.  The conference may be set up so that he will appear in person, by videoconference or by telephone—and he must attend whatever format Magistrate

United States District Court
Northern District of California

10

Judge Illman chooses.

Plaintiff is cautioned that he may be sanctioned for failure to comply with an order to participate in a settlement conference, and such sanctions may include dismissal of part or all of the action.  *See* Fed. R. Civ. P. 16(a), (f), and 41(b).  Plaintiff must also timely respond to court orders.

## CONCLUSION

1.  For the reasons set forth above, defendants' motion for summary judgment (Docket No. 70) is **GRANTED IN PART AND DENIED IN PART**.  All defendants are **DISMISSED** with prejudice except for Gutierrez.

2.  This action is now referred to Magistrate Judge Illman for mediation or settlement proceedings pursuant to the Pro Se Prisoner Mediation Program.  The clerk shall **SEND** a copy of this order to Magistrate Judge Illman.  This case is **STAYED** until further order from the court.

**IT IS SO ORDERED.**

Dated: December 28, 2022

 */s/ Phyllis J. Hamilton*

PHYLLIS J. HAMILTON
United States District Judge

United States District Court
Northern District of California