UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL LANDON LUCKERT,<br><br>Plaintiff,<br><br>v.<br><br>EDWARD GUTIERREZ,<br><br>Defendant. | Case No. 19-cv-08204-PJH<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 169, 170 |

Plaintiff, a former county detainee, proceeds with a pro se civil rights complaint under 42 U.S.C. § 1983. He alleges that defendant Deputy Gutierrez used excessive force during two separate pat down searches. Plaintiff filed a motion for summary judgment and defendant filed a second motion for summary judgment. Dkt. No. 169, 170. For the reasons set forth below, plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment is granted.

**PRIOR PROCEEDINGS**

On September 3, 2020, the court ordered service of plaintiff's amended complaint (Dkt. No. 20) on several claims of excessive force against multiple defendants regarding plaintiff's arrest at the public library and placement in a cell at the county jail. Dkt. No. 21. Many claims and defendants were later dismissed but what is relevant for the instant motions were the allegations that defendant Gutierrez injured plaintiff's wrist at the library and Gutierrez and former defendant Mendoza injured plaintiff while placing him in a cell at the county jail. Dkt. No. 20 at 3-6. Plaintiff stated that Mendoza bent his wrist back and pulled the wrist out of the joint and injured plaintiff's hand when he removed plaintiff's soiled pants at the county jail. *Id*. at 6-7.

Defendants filed a summary judgment motion which included various declarations and exhibits. Plaintiff filed several oppositions (Dkt. Nos. 77, 81, 85) and generally argued that he was not resisting but he presented very few arguments regarding the actions of the individual defendants. The operative amended complaint had presented specific allegations against Mendoza, but in opposition to summary judgment plaintiff stated that this was a mistake because he confused Mendoza and Gutierrez. Dkt. No. 77 at 9-10. Plaintiff asked that the allegations against the defendants be switched. *Id*.

In light of plaintiff proceeding pro se and at times being incarcerated or homeless, he was permitted to switch the allegations. The summary judgment motion included a declaration submitted by Mendoza and exhibits describing the amount of force that was used, which he argued was minimal. Plaintiff did not even attempt to refute this assertion, and most of his opposition to summary judgment focused on Gutierrez.

On December 28, 2022, the court granted summary judgment to Mendoza, who was dismissed with prejudice. Dkt. No. 89 at 7-11. Summary judgment was denied to Gutierrez and the case continued with claims of excessive force against Gutierrez for the events at the library and at the county jail. *Id*.

This case was originally scheduled for trial against Gutierrez in May 2024, but was continued to July 29, 2024, because of plaintiff's arrest, sentencing and subsequent incarceration in a federal case in this district. In April 2024, plaintiff filed several motions, one of which sought to recall Mendoza and substitute him for Gutierrez and dismiss Gutierrez and call him as a witness. Dkt. Nos. 147, 150, 154, 155. Plaintiff once again sought to switch the allegations regarding Mendoza and Gutierrez. He argued that it was Mendoza who used excessive force at the county jail. Dkt. No. 155 at 1-2. To further confuse the issue, plaintiff also stated in an additional filing that Gutierrez should in fact not be dismissed but kept as a defendant for injuring plaintiff's wrist at the library while Mendoza was responsible for the excessive force at the jail. Dkt. No. 160 at 2-4.

The court construed plaintiff's motions as a motion for relief from a judgment or order under Rule 60 and a motion to amend under Rule 15.  On June 14, 2024, plaintiff's motions were denied.  Dkt. No. 162.  Mendoza was not recalled and remained dismissed with prejudice.  *Id*. at 8.  The trial date was vacated, and defendant was permitted to seek additional discovery.  In light of plaintiff's changing positions on who used excessive force against him, defendant Gutierrez was permitted to file a second motion for summary judgment regarding events at the library and the jail.  *Id*.  Plaintiff was not given permission to file a motion for summary judgment as the dispositive motion deadline had long since expired and because plaintiff's prolific filings simply reargued the same and different facts over and over.  Nonetheless, plaintiff did file a motion/opposition and it has been considered by the court.

## MOTION FOR SUMMARY JUDGMENT

**Legal Standard**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those which may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial.  *Id.*  If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins.  *Id.*

**Facts**

A review of the record indicates that the following facts are undisputed unless otherwise noted:

On February 26, 2019, at approximately 4:15 p.m., Library Patrol Officer Ochoa was on duty at the San Francisco Main Library and received a call that a library staff member had been physically assaulted on the sixth floor. Motion for Summary Judgment 2 ("MSJ2") Wang Ex. B, Ochoa Decl. ¶ 3.[1] Ochoa responded to the sixth floor, and library staff identified plaintiff as the assailant, who was still in the area. *Id*. at ¶ 4. Ochoa approached plaintiff, who was visibly agitated and acting erratically and took up an aggressive stance. *Id*. at ¶¶ 4, 5.

After attempting to speak with plaintiff, Ochoa radioed for assistance to the San Francisco deputy sheriffs who were assigned to the library. *Id*. at ¶ 5. Deputy Smith arrived and tried to speak with plaintiff. Wang Ex. C, Smith Decl. ¶¶ 3-5. Smith observed that plaintiff was still visibly agitated. *Id*. at ¶ 4.

After trying to speak with plaintiff, Smith, with Ochoa's assistance, handcuffed plaintiff for everyone's safety as they continued to investigate. Smith Decl. ¶ 5. Once plaintiff was handcuffed, Smith told plaintiff that he was under arrest for willfully resisting, delaying or obstructing a peace officer. *Id*.

Smith then escorted plaintiff from the sixth floor to the security office on the first floor. *Id*. at ¶ 6. Smith radioed his partner, defendant Deputy Gutierrez, and informed him about the incident and asked him to meet him at the security office. *Id*. at ¶ 7.

Gutierrez and other deputies met Smith, Ochoa, and plaintiff at the security office. Brule Decl. ¶ 3; Wang E. A, Gutierrez Decl. ¶ 3. Prior to searching plaintiff, who was still handcuffed, Gutierrez asked him if he had anything on his person that could harm Gutierrez. Gutierrez Decl. ¶ 4. Plaintiff did not respond but was verbally hostile and aggressive. *Id*. ¶ 3. Gutierrez applied a bent wrist-lock on plaintiff with one hand and pat

---

[1] Many of the declarations are the same declarations from the first summary judgment motion.

searched with the other. *Id*. ¶ 5  Gutierrez applied minimal pressure and found a knife concealed in plaintiff's pocket. *Id*. at ¶¶ 4-5.  Nobody made any physical contact with plaintiff in the security office other than when Gutierrez searched him. *Id*. at ¶ 5.

Plaintiff generally disputes Gutierrez assertions, though his allegations differ in various filings.  In the amended complaint, plaintiff stated that at the security office multiple officers pushed him onto the bench and on the floor and twisted his wrists causing severe pain.  Dkt. No. 20 at 5.  In his opposition to the first summary judgment motion, he alleged that multiple officers used excessive force on him.  Dkt. No. 77 at 7.

At his deposition, plaintiff stated that upon entering the security office, he was immediately pushed to the floor, officers got on top of him, and then jumped on him and were bending his wrists.  Wang Ex. F, Luckert Depo at 72-73.

In his summary judgment motion and opposition to the second summary judgment motion, plaintiff states that he was brought to the security office and one officer applied pressure to his handcuffed hand.  Dkt. No. 169 at 9-10; Dkt. No. 175 at 2-3.  He did not know which officer was responsible for applying pressure to his handcuffed hand until he read the declaration from each officer and determined it was Gutierrez.  *Id*.  In these sections of his filings, plaintiff does not address his original assertions that multiple officers jumped on him, pushed him to the ground, and twisted his wrists.  *Id*.  Later in these filings, plaintiff quotes his earlier filings and states several people pushed him to the bench and floor and twisted his wrists. Dkt. No. 169 at 18; Dkt. No. 175 at 11.

In his deposition, plaintiff stated that at the security office the incident with multiple officers jumping on him and knocking him to the ground occurred before "[t]hey went in [his] pockets and everything and tried to find ID and stuff like that." *Id*. at 76-77.  Plaintiff testified that "after they were done" using force—"after they went away and they weren't beating me up anymore, they weren't around me, I ended up trying to get up"—and that was when "[t]hey went in my pockets too. They went in my pockets and everything and tried to find ID and stuff like that." *Id*.  Plaintiff did not argue that the force used during the search of his pockets in the security office was excessive. *Id*. at 72-77.

5

Gutierrez and others then escorted plaintiff to the transport van outside of the library and secured him in the back. Gutierrez Decl. ¶ 6  Deputy Mendoza arrived and drove plaintiff to San Francisco County Jail with Gutierrez. Gutierrez Decl. ¶ 7; Wang Ex. E, Mendoza Decl. ¶ 3. Upon arriving at the jail, plaintiff was placed into a holding cell. Gutierrez Decl. ¶ 9. Before, being placed in the holding cell, Gutierrez again searched plaintiff by applying a rear wrist-lock on plaintiff with minimal pressure. Gutierrez Decl. ¶ 9. This claim against Gutierrez was already dismissed in the prior summary judgment motion. Dkt. No. 89 at 4, 7.

During the booking process at the jail, plaintiff refused to answer some questions from Jail Medical Services, including refusing to answer whether he was suicidal. Gutierrez Decl. ¶ 10. When asked if he was injured or had any wounds, plaintiff answered in the negative. Chan Decl. ¶ 11. Plaintiff disputes this and states that when he began to tell medical staff about his injuries, he was taken to a cell. Dkt. No. 175 at 8.

Plaintiff was then placed in a safety cell for being combative and presenting an imminent danger to himself and others. Mendoza Decl. ¶ 6. Plaintiff was ordered to his stomach so that his handcuffs could be removed, and his clothes were removed because he had soiled them. *Id*.; Gutierrez Decl. ¶ 12. Other deputies removed plaintiff's handcuffs and clothes. Mendoza Decl. ¶ 7. Gutierrez states he did not make physical contact with plaintiff while in the safety cell. Gutierrez Decl. ¶ 11. Plaintiff has stated that it was not Gutierrez who was involved in removing his clothes or handling his wrists while in the safety cell. Dkt. No. 150 at 1-7. Plaintiff alleged that the removal of his clothes and handling of his wrist caused him a great deal of pain and suffering. Dkt. No. 20 at 7.

Plaintiff was released from custody the following day, February 27, 2019. Mendoza Decl. Ex. A at 2. Medical reports from March 1, 2019, indicated that plaintiff's hand had no visible fractures or malalignment, but there was regional soft tissue swelling and there was a punctate hyperdensity in the distal left thumb and some excoriations on the fingers. Dkt. No. 169-1 at 15, 18.

## ANALYSIS

**Legal Standard**

An allegation of the use of excessive force by a law enforcement officer in effectuating an arrest states a valid claim under 42 U.S.C. § 1983. *See Rutherford v. City of Berkeley*, 780 F.2d 1444, 1447 (9th Cir. 1986), *overruled on other grounds by Graham v. Connor*, 490 U.S. 386 (1989); *see also Byrd v. Phoenix Police Dep't*, 885 F.3d 639, 641-42 (9th Cir. 2018) (pro se allegations that police officers "beat the crap out of" plaintiff and caused him severe injury enough to support a legally cognizable claim under § 1983). Excessive force claims which arise in the context of an arrest or investigatory stop of a free citizen are analyzed under the Fourth Amendment reasonableness standard. *See Graham v. Connor*, 490 U.S. 386, 394-95 (1989).

"To determine whether officers used excessive force during an arrest, courts balance 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Luchtel v. Hagemann*, 623 F.3d 975, 980 (9th Cir. 2010) (quoting *Graham*, 490 U.S. at 396). In the Ninth Circuit, evaluation of an excessive force claim under *Graham* involves three steps: (1) assessment of the severity of the intrusion on Fourth Amendment rights by evaluating the type and amount of force used; (2) evaluation of the government's interest in the use of force; and (3) balancing the gravity of the intrusion on the individual with the government's need for the intrusion. *Glenn v. Washington Cnty*, 673 F.3d 864, 872 (9th Cir. 2011). "The operative question in excessive force cases is 'whether the totality of the circumstances justifie[s] a particular sort of search or seizure.'" *County of Los Angeles v. Mendez*, 137 S. Ct. 1539, 1542 (2017) (alteration in original) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)).

With respect to the events at the county jail, defendant is entitled to summary judgment. It is undisputed that the allegation involving plaintiff being subject to a rear-wrist lock while being patted down upon arrival at the jail was already dismissed in the prior summary judgment motion. It is also undisputed that defendant was not involved in

the removal of plaintiff's clothes or handling of his wrists while in the safety cell.

In his motion for summary judgment and opposition to defendant's second summary judgment motion, plaintiff attempts to alter his allegations regarding events at the jail. He argues that the initial search at the holding cell of the jail by defendant actually occurred later during the incident in the safety cell and that both cells are actually the same. Dkt. No. 169 at 16-17. Plaintiff argues that defendant's declaration discussing the events and different cells is a lie. *Id*. at 17. Plaintiff provides no support for his allegations, nor does he address why he is only now altering or clarifying his allegations.

Regardless, plaintiff's conclusory allegations with no support are insufficient to survive summary judgment. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment."). It is undisputed and plaintiff has previously conceded that defendant was not involved in the events in the safety cell. The court previously dismissed the claim that excessive force was used during the initial search upon arrival at the jail. Because it is undisputed that defendant was not involved in the relevant incident at the jail, he is entitled to summary judgment.

The court now addresses the incident at the library security office. In the amended complaint and original summary judgment motion, plaintiff argued that multiple people were involved in assaulting him that led to his wrists being injured. In the first summary judgment motion, plaintiff only presented specific facts and arguments regarding Gutierrez and it was undisputed that he was the only defendant involved in searching plaintiff at the library security office. Based on those facts and the disputed facts presented by the parties, the court denied summary judgment for Gutierrez.

However, in plaintiff's summary judgment motion and opposition to defendant's second summary judgment motion, he presents different allegations and arguments. While he does briefly reference the prior allegations from his amended complaint regarding multiple people assaulting him, he also states that he was brought to the

8

security office, and he did not know which officer was responsible for applying pressure to his handcuffed wrists until he read the declaration from each officer and determined it was defendant.

It is difficult to discern plaintiff's specific allegations and arguments.  Defendant's second summary judgment motion specifically focuses on the incident at the library security office, but plaintiff only briefly addresses it.  In plaintiff's deposition testimony, plaintiff stated that at the security office the incident with multiple officers jumping on him and knocking him to the ground occurred before "[t]hey went in [his] pockets and everything and tried to find ID and stuff like that."  Wang Ex. F, Luckert Depo at 76-77.  Plaintiff stated that "after they were done" using force—"after they went away and they weren't beating me up anymore, they weren't around me, I ended up trying to get up"—and that was when "[t]hey went in my pockets too. They went in my pockets and everything and tried to find ID and stuff like that."  *Id*.  Plaintiff's own deposition testimony does not contend that any force was used when his pockets were searched, and it is undisputed that defendant was the individual who searched plaintiff's pockets.

Looking to all of this evidence, defendant has met his burden in demonstrating the absence of any genuine issue of material fact.  Defendant has shown that the only force used at the security office was when he used a one-handed bent wrist-lock on plaintiff, using minimal pressure in order to pat search plaintiff with his other hand and this did not constitute excessive force.

Plaintiff has not met his burden in showing that there is a genuine issue for trial.  In the second summary judgment motion, defendant noted plaintiff's deposition testimony and argued that it demonstrated there was no excessive force when defendant searched him.  Plaintiff did not address this in his filings, nor does he meaningfully challenge defendant's other assertions.

Plaintiff presents very few allegations or arguments regarding how excessive force was used at the security office.  Plaintiff argues that defendant applied pressure to his handcuffed wrist at the security office.  Dkt. No. 175 at 2-3.  He separately argues that

9

defendant was hell bent on injuring his hand.  Dkt. No. 176 at 8-8.  However, he provides no other details or arguments for this particular statement, and it is not clear which incident this statement is referencing.  While plaintiff repeats the allegations from his amended complaint that multiple people were involved in assaulting him, he does not present sufficient arguments regarding defendant's involvement, nor does he clarify his allegations and arguments in response to the contentions in defendant's second summary judgment motion.

      Plaintiff is proceeding pro se and has at times been incarcerated; therefore, the court has liberally construed his filings.  *See Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) ("We have, therefore, held consistently that courts should construe liberally motion papers and pleadings filed by pro se inmates and should avoid applying summary judgment rules strictly.").  However, while *Ponder* relieves pro se inmates from strict compliance with summary judgment rules, it does not entirely release them from any obligation to identify or submit at least some competent evidence in support of their claim.  *Soto v. Sweetman*, 882 F.3d 865, 873 (9th Cir. 2018) (plaintiff not entitled to equitable tolling because he failed to allege in his complaint that he could not proceed with grievance process until after an investigation was completed; failed to submit any declaration, affidavit or other competent evidence in his opposition to summary judgment; and failed to raise the issue until responding to the district court's show cause order).  Moreover, it is not the task of the district court to scour the record in search of a genuine issue of triable fact.  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment.  *Id*.  If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party.  *See id*.; *see, e.g.*, *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028-29 (9th Cir. 2001) (even if there is evidence in the court file which creates a genuine issue of material fact, a district court may grant summary judgment if the opposing papers do not include or conveniently refer to that evidence).

1    Plaintiff's brief and conclusory arguments are insufficient to overcome summary
2    judgment.  He now argues that multiple people assaulted him and that defendant was
3    involved, but the evidence as reflected by his deposition testimony is that there was no
4    force used at this time.  Thus, he has not met his burden by setting forth specific facts to
5    show that this occurred and there is a genuine issue for trial.  Plaintiff has not presented
6    arguments or evidence for the court to determine if there is a factual dispute sufficiently
7    material to warrant denial of defendant's second summary judgment motion. Nor has
8    plaintiff met his burden in showing that defendant's brief pat down in the library security
9    office constituted excessive force when he stated at the deposition that the force was
10   used before his pockets were searched.  Plaintiff's argument regarding the pat down
11   seem to chiefly rely on defendant's statement that he applied a bent wrist-lock with
12   minimal pressure.  However, simply because defendant applied some pressure to
13   plaintiff's wrist does not automatically result in a finding of excessive force.  Defendant
14   argues that it was a de minimis use of force and plaintiff has not met his burden in
15   showing that there are disputed facts regarding the use of force.  Much of defendant's
16   second summary judgment motion focused on the incident at the library security office.
17   Despite the importance of this claim, plaintiff only presented cursory arguments in his
18   filings.
19   The court notes that unreasonable force claims are generally questions of fact for
20   a jury.  See Headwaters Forest Defense v. Cnty. of Humboldt, 240 F.3d at 1185, 1198
21   (9th Cir. 2000) overruled on other grounds; Hervey v. Estes, 65 F.3d 784, 791 (9th Cir.
22   1995) (citing Barlow v. Ground, 943 F.2d 1132, 1135 (9th Cir. 1991).  Although excessive
23   force cases can be decided as a matter of law, they rarely are because the Fourth
24   Amendment test for reasonableness is inherently fact specific.  See Headwaters, 240
25   F.3d at 1198; see, e.g., Estate of Diaz v. City of Anaheim, 840 F.3d 592, 605-06 (9th Cir.
26   2016) (although plaintiffs presented substantial evidence that force was unreasonable,
27   judgment as a matter of law inappropriate because defendants also presented substantial
28   evidence to support their position; jury entitled to choose between both positions based

on their weighing of the evidence and witnesses' credibility).

Here, it is difficult for the court to determine the exact nature of plaintiff's allegations, and he has ultimately failed to meet his burden in demonstrating disputed facts to show excessive force during the search at the library office.  He has not sufficiently shown specifically which defendant used excessive force or that the minimal pressure Gutierrez used during the search was excessive.  *See Donovan v. Phillips*, Case No. 14-cv-0680-CRB, 2015 WL 993324, at *5-7 (N.D. Cal. Mar. 4, 2015), aff'd, *Donovan v. Phillips*, 685 Fed. App'x 611 (9th Cir. 2017) (gripping a woman's wrist, applying pressure, and twisting her arm, causing her to roll onto the ground and injuring her rotator cuff when she did not comply with orders to get back into a car was objectively reasonable).  While it is undisputed that plaintiff was diagnosed with some injuries to his wrist three days after these events, he has not shown that the injury was from this search conducted by defendant.  Summary judgment is granted to defendant for this claim.

**Qualified Immunity**

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The rule of "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  Defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. *Id*. at 205.  A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established, such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (overruling the sequence of the two-part test that required determining a deprivation first and then deciding whether such right was clearly established, as required by *Saucier*).  The court may exercise its discretion in

deciding which prong to address first, considering the particular circumstances of each case. *Pearson*, 555 U.S. at 236.

Here, the court found that defendant did not deprive plaintiff of a constitutional right. Defendant is entitled to qualified immunity because the undisputed facts demonstrate that defendant did not utilize excessive force during the two separate searches. With respect to the search at the library security office, it would not be clear to a reasonable deputy that the minimal pressure used to search plaintiff would violate his constitutional rights.

## CONCLUSION

1. For the reasons set forth above, defendant's motion for summary judgment (Dkt. No. 170) is **GRANTED** and plaintiff's motion for summary judgement (Dkt. No. 169) is **DENIED**.

2. The clerk shall close this case.

**IT IS SO ORDERED.**

Dated: March 3, 2025

            */s/ Phyllis J. Hamilton*
            PHYLLIS J. HAMILTON
            United States District Judge